Mr. Chief Justice Sharkey
delivered the opinion of the court.
The plaintiff in error was sued as executor of Thomas Hurd, for a debt due by Mrs. Hurd before marriage, to the defendant in error. The marriage took place in 1842 ; Mrs. Hurd died in October, 1843, and Hurd died in June, 1846. This suit was brought in April, 1849. The indebtedness consisted of a sum of money due on an open account. The question is, Whether a case has been made out, which shows that Hurd, in his lifetime, and after the death of his wife, had become legally liable to pay this debt.
The jury found against the plaintiff in error, and he moved for a new trial, which motion was overruled. Four reasons were assigned on the motion; 1st. Because improper evidence was permitted to go to the jury; 2d. Because improper charges were given; 3d. Proper charges asked by counsel of defendant below were refused ; and 4th. Because the- verdict was contrary to law and evidence. On these questions the case comes up.
In the discussion of these several grounds taken for reversing the judgment, the counsel for the plaintiff in error commenced with the last, and insisted that the verdict was against law and evidence. Where the evidence is conflicting or doubtful, it is a delicate matter for an appellate court to interfere with a verdict, which has been permitted to stand by the court below. There should, at least, be a great preponderance of evidence against the verdict. Where that is the case, the statute makes it our duty to interpose. As was very well said by counsel on the other side, the question is not whether the verdict is clearly right, but whether it is manifestly wrong.
The principles of law which must govern this case, are very well settled. The husband is liable for the debts contracted by *606 the wife before marriage, but his responsibility continues only so long as the relation of husband and wife exists. If the wife die’before a recovery, the husband’s liability ceases. Clancy, 13, 21. Hurd, therefore, was exonerated from legal liability by his wife’s death, unless he became bound in some other manner. This dilemma is attempted to be got rid of’by establishing a promise to pay this debt, after his'wife’s death, in consideration of forbearahce. We can see no advantage that can be derived from a mere naked promise, made during- the existence of the marriage, without any new consideration. Such a promise cannot be stronger than the law which imposes a legal liability on the husband. It is like a promise to pay a man’s own bond. The account stated during the life of Mrs. Hurd was evidence of the correctness of the account, but it is not seen how it could 'shift the liability, or create a distinct binding obligation.
But subsequent promises are relied on also. The law is equally clear, that even an express promise by the husband, after the dissolution of the marriage, will not bind him personally, without a new consideration to support it. Chitty.on Contracts, 39, Boston edit, of 1827. This indeed is the inevitable result of the principle, that the obligation'ceases at the wife’s death. The liability of the husband does not accrue by virtue of the original contract, but by the marriage, and if it ceases when that is dissolved, he can be liable, then, only as a stranger would be for the debt of a third person. Or if he be executor, he may make himself liable as any other executor can. A promise by a stranger to pay the debt of another, in consideration of forbearance, is sufficient to create a liability, but the promise must be in writing, and the party who seeks to-recover on such a contract must allege and prove the forbearance, otherwise he cannot recover, if it appear that the debt was not the debt of the defendant. If Hurd, therefore, was liable as a third person, this is the rule which must govern. But he was also executor.. As such he could become liable for the debts of his testatrix, only on a written promise, founded’ on a new consideration. The statute of frauds does not make the *607 written promise sufficient, of itself, to bind the executor personally. It only prescribes a rule for proving the contract; there must still be a consideration. Chitty on Contracts, 200; 7 Term, Rep. 350, note; Forth v. Stanton, 1 Saund. 210, (n. 1); 2 Saund. 136. And whether the claim be asserted against Hurd as husband, or as executor, the forbearance is still necessary to make out a right to recover. A written promise and forbearance are necessary in either case; the promise without the forbearance has no consideration to support it, it is a nude pact.
With these principles in view, we may proceed to inquire how far the facts show such a contract as the law requires. It seems that Hurd married Mrs. Smith in July, 1842, in Alabama. In March, 1843, an account of Mrs. Smith’s indebtedness was made out. The clerk says Hurd called several times whilst it was in progress, and furnished memorandums, and after it was finished, made no objection to it. A statement of balances, due on the principal account, and of certain other items, was drawn up, showing the aggregate balance, with Hurd’s signature to these words: “ Received an account, as stated above, and find it correct. March 6, 1843.” This is the evidence of the stated account. If suit had been brought against Hurd and wife, this would probably have been sufficient evidence of the amount due, but it does not amount to an individual promise to pay. It did not change the debtor, or the nature of the original debt. Chitty on Contracts, 198. And on an account stated by husband and wife, for an amount due by her while sole, the action cannot be maintained against the husband alone. 2 Stark. Ev. 125. Of course, then, he could not be sued on it after her death. We may then pass this portion of the evidence as being entitled to but'little weight, and proceed to the evidence of a subsequent promise.
Soon after the statement of the account, Hurd and wife came to this state, and here located. Hurd commenced a correspondence with Kirkman on the 5th of May, 1843. It seems that Hurd had drawn a bill on a mercantile house in New Orleans, for $4460, which was protested. The first, second, and third letters relate almost exclusively to this debt, which has since been paid. *608 They contain nothing from which a promise could be even inferred, and do not require particular notice. But the fourth letter is very much relied on. It is dated the 30th of September, 1843. Hurd expresses his regret at the prospect of an inability to pay all of the amount of the note in bank, alluding to the debt which originated in the bill above mentioned, and proceeds to say, “ There seems, therefore, a necessity that you should a little longer befriend us by arranging the protested bill, and add the amount of it to the mammoth debt we owe Jane and you, as was the understanding between you and me last year with respect to this same debt.” The mammoth debt spoken of is the debt sued for. This letter does not contain a promise by Hurd to become individually liable, or even an admission of such liability. He may very well have called it “ the mammoth debt we owe you,” his wife was still living, and he was legally liable to pay it. But he said the debt “ we owe,” thus speaking of it as a debt due from his wife and himself, as it really was. Now suppose he had been sued alone for this debt during the life of Mrs. Hurd, could the action have been sustained on this letter? Not at all.
By the next letter, dated 12th of October, 1843, Hurd informed Kirkman of Mrs. Hurd’s death, and, after giving some information as to the contents of her will, in which he was appointed executor, he remarks, “ Before deciding whether or not to undertake the executorship, I wish to confer with you respecting our debt. You know the condition of the estate; it owes no debts, except some little accounts, save to you. But the debt to you is very large, and if pressed to collection, would sweep nearly or quite the whole estate. If five or six years can be given, and if crops should be good, and the market favorable, the debt may be extinguished, and property enough retained to provide a support for Mrs. Pope, as well as myself.” In the succeeding part he expressed a desire to have an arrangement made that would give time, and said he could give his notes, secured by a deed of trust on the estate; but if the required time could not be given, and the arrangement placed on a certain foundation, not liable to be changed by the death of either party, *609 he thought it best that the property should be sold at once. This was, at most, a mere proposition for forbearance, and it does not contain a direct offer to become personally responsible in case it should be given. The notes spoken of were to be given to secure payment by the estate, as must be plain by the offer to make a deed of trust on the “ estate,” to secure their payment. He must be understood as meaning the estate of his wife, not only in this part of the letter, but in its beginning, when he says, if pressed to collection, it “ would sweep nearly or quite the whole estate.” So far from a personal liability being expressly spoken of, this whole letter seems to look to and speak of the estate of the wife, as the only fund liable. But suppose it should be regarded as an offer to become personally responsible, on condition of forbearance, it should be shown that Kirk-man acceded to the proposition and extended the time. This, however, was not done at the time, for in a subsequent letter, dated the 16th of Nov. 1843, Hurd again calls Kirkman’s attention to the proposition, and repeats in substance the same proposition, calling it “ our debt.”
At this point the correspondence seems to have ceased for a time. The next letter is dated the 15th of May, 1845, in which allusion is made to an offer to compromise a claim set up against him as executor by Mrs. Pope, which had been submitted to him by her attorneys. In reference to this he says, if it should be made, “It would be necessary to put the debt to you into instalments, for the payment of which I would give a note with a deed of trust or mortgage on the negroes.” He wrote again on the 16th of September, saying he had received no reply to his letter of the 16th of May. Up to this time then we must infer that the proposition for putting the debt into instalments, had not been accepted. It is alluded to in every preceding letter, beginning with that written on the 12th of Oct. 1843. If the letters are to be evidence of the proposition, they must also be evidence that it was not accepted. Not a particle of other evidence of the acceptance was introduced. The letters amount to evidence that the debt existed against the estate; that it was large, and Hurd desired to get an extension of time, by having it put into instal- *610 merits, for which he was willing to give hiis notes, with a lien upon the property of the estate, to secure their payments. He was executor, and had in his possession as such, the property that was liable. His letters express nothing more than the desire which would be likely, to be entertained by one in his situation. Suppose he had had no other connection with the estate than as executor, would these letters bind him personally 1 They clearly would not, if we have laid down the law correctly. The new consideration is wanting, no less than a definite promise to be personally liable. The case is none the stronger because he was husband of the testatrix also. In that capacity the new consideration is wanting, even if the promise were more definite than it is. It is most manifest that the indulgence was not given. All of Hurd’s letters relate to an extension of five or six years; he proposed no shorter time. The proposition had not been acceded to on the 16th of September, 1845, and this suit was brought in April, 1849, a little over three years from the time at which the letter of the 16th of Sept. 1846, informs us the arrangement had not been made. An indulgence for a shorter time was no consideration, unless Hurd had agreed to it, ■ of which there is no evidence.
We might perhaps here pause, but there are other errors. The court refused to charge the jury that the plaintiff’s action for the whole, or any part of this claim, cannot be sustained on the will of Mrs. Hurd, as it gave the plaintiff no right of action at law. This action was not against Hurd as executor, but against Hurd’s executor as for a claim due by Hurd individually. The construction of the will is matter of law to be determined by its face. We need not say how far it is competent for one person by will to impose a legal liability on another. It could not be done certainly,' unless by some condition accepted by the party to be charged. This will contains no clause or bequest which could make Hurd personally liable for this debt, and the charge should have been given.
Tne court also refused to charge, that if a person supposing himself to be liable for a debt, for which in fact he is not liable, in consideration of an extension of time, promises to pay the *611 debt, such promise is not binding for want of consideration. This point is pressed as error on the authority of Newell v. Fisher, 11 S. & M. 431, and we notice it, to mark the distinction between the cases. The doctrine there laid down was, that in order to render the agreement to forbear, and the forbearance of a claim a sufficient consideration, it is essential that such claim be sustainable at law ; the consideration fails if it appear that the demand was without foundation. In that case the note was void, and therefore the promise in reference to it was not binding. The claim was not sustainable at law. Here it is otherwise. The claim is sustainable at law against Mrs. Hurd’s estate, and the doctrine involved does not apply, assuming that the promise was made in due form.
But on the first point we think there was a want of evidence, and on the second that the court erred in refusing to charge as directed. The statute of limitations is not noticed, because it is said it was not insisted on in the court below. No charge was given on the subject, though it might have been raised under the pleadings, as the parties went to trial under an agreement that all special matter might be given in evidence as though it had been pleaded. Indeed the executor was not bound to plead it specially, though perhaps he was bound to insist on it.
Judgment reversed, and cause remanded.